IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CHRISTY M. FLOWERS,            )
                               )
     Plaintiff,                )
                               )
v.                             )    CIVIL ACTION NO 11-0213-WS-N
                               )
MICHAEL J. ASTRUE, Commissioner)
Of Social Security,            )
                               )
     Defendant.                )

REPORT AND RECOMMENDATION

In this action, plaintiff appeals the final decision of the Commissioner denying her claim for disability and SSI benefits. This matter has been referred to the undersigned for preparation of a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.2(c)(3). By order (doc. 17) dated November 8, 2011, the undersigned granted the parties' joint motion to waive oral argument (doc. 16). After careful consideration of the record, including the briefs of the parties, it is the recommendation of the undersigned that the decision of the Commissioner be AFFIRMED.

Procedural Background

Plaintiff filed the current application for benefits on October 31, 2008, alleging that she became disabled on November 15, 2006. Following an initial denial, a hearing was held before an Administrative Law Judge ("ALJ") on January 8, 2010. Plaintiff was represented by counsel at the hearing.

Following the hearing, the ALJ entered a written decision (doc. 12, at 15-27) in which she held that plaintiff suffered from a single severe impairment—degenerative disc disease of the lumbar spine—and retained the residual functional capacity to perform light work with the

following limitations: standing for no more than 15-20 minutes at a time and for no more than a total of 2 hours in an eight hour day; no climbing of ladders, ropes or scaffolds; no work around unprotected heights or dangerous equipment; no more than occasional bending, stooping, kneeling, crouching or crawling; and no complex job instructions. Id. Based upon those findings, the ALJ held that plaintiff could perform her past relevant work as a receptionist, and could perform other jobs available in the national economy and thus was not disabled.

Plaintiff sought review by the Appeals Council on March 19, 2010, and submitted additional records. Id. at 5. The Appeals Council denied review (id. at 1-3), rendering the decision of the ALJ the final decision of the Commissioner. 20 C.F.R. § 404.981.

## Issues on Appeal

Plaintiff raises the following issues in this appeal:

1) That the Commissioner erred in failing to fully develop the record; and

2) That the Commissioner erred in failing to find plaintiff's depression to be a severe impairment.

## Scope of Judicial Review

A limited scope of judicial review applies to a denial of Social Security benefits by the Commissioner. Judicial review of the administrative decision addresses three questions: (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact resolved the crucial issues. Washington v. Astrue, 558 F.Supp.2d 1287, 1296 (N.D.Ga. 2008); Fields v. Harris, 498 F.Supp. 478, 488 (N.D.Ga. 1980). This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. If substantial evidence supports the Commissioner's factual findings and the Commissioner applies the proper legal standards, the

Commissioner's findings are conclusive. Lewis v. Callahan, 125 F.3d 1436, 1439-40 (11th Cir. 1997); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987); Hillsman v. Bowen, 804 F.2d 1179, 1180 (11th Cir. 1986); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). "Substantial evidence" means more than a scintilla, but less than a preponderance. In other words, "substantial evidence" means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be enough to justify a refusal to direct a verdict were the case before a jury. Richardson v. Perales, 402 U.S. 389 (1971); Hillsman, 804 F.2d at 1180; Bloodsworth, 703 F.2d at 1239. "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is substantially supportive evidence" of the ALJ's decision. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). In contrast, review of the ALJ's application of legal principles is plenary. Foote v. Chater, 67 F.3d 1553, 1558 (11th Cir. 1995); Walker, 826 F.2d at 999.

## Facts

Plaintiff was 29 years of age at the time of her application, and 31 years of age at the time of the hearing and decision. She completed the eleventh grade and took some twelfth grade classes, but did not graduate from high school and failed in an attempt to obtain her GED. Plaintiff's past relevant work includes: certified nursing assistant, veterinarian technician, waitress, cashier, maid, and receptionist.

Plaintiff claims injury to her back resulting from an on-the-job injury in July, 2006. Plaintiff made an unsuccessful attempt to return to work after her alleged date of disability. She worked for two-and-a half months doing janitorial work with for Rite-Way Services with her husband. Her earnings during this period did not constitute substantial gainful activity, and her husband performed most of the work. The agency initially, and the ALJ thereafter, determined that this work attempt was unsuccessful and thus did not alter her eligibility for benefits.

Plaintiff's last employment before claiming disability was as a Certified Nurse's Assistant; she was injured on the job in July, 2006, and returned to work on restricted duty until November 15, 2006, when she was terminated from that position.

## Analysis

Failure to Develop Record

Plaintiff's first claim concerns the Commissioner's findings concerning her physical impairments and the basis for the residual functional capacity determination. Plaintiff takes issue with the ALJ's reliance on medical records from Dr. G.L. Rutledge and Dr. J.A. Alex Seldomridge. Plaintiff claims that the ALJ could not properly rely on references in those records to "light duty" work in finding that plaintiff could perform "light work" as that term is defined in the Social Security regulations, and had a duty to order a consultive examination or otherwise obtain additional medical records to provide a valid basis before making such a determination.

The record presented to the ALJ contained treatment notes and opinions from two treating physicians which support the ALJ's conclusions. Dr. Rutledge is an orthopedic surgeon who treated plaintiff from July 25, 2006, to September 2007[1], for her lower back problems

---

[1] In September 2007, Dr. Rutledge's office requested that plaintiff submit to drug testing. She refused. Dr. Rutledge provided no further care and wrote no additional prescriptions for plaintiff after that point. Plaintiff began seeing Dr. Seldomridge in October 2007.

4

related to her on-the-job injury. In his initial examination, he noted that the x-rays of plaintiff's lumbar spine showed borderline disc narrowing at L5-S1, but were otherwise normal. Physical examination revealed tenderness, a positive straight leg raise, and normal reflexes. Dr. Rutledge diagnosed plaintiff as having lumbar discogenic pain syndrome and a possible herniated lumbar disc. He initially recommended that plaintiff undergo physical therapy and a lumbar epidural injection, that she begin an exercise program and that she not work. On August 8, 2006, Dr. Rutledge released plaintiff to light work, with the following limitations: no lifting over 10 pounds and no bending, stooping or climbing. He noted that plaintiff said she had gotten no relief from the epidural but that the physical therapy had helped. On August 29, 2006, he noted that an MRI scan was normal. On September 4, 2006, Dr. Rutledge released plaintiff to light duty work.

On October 10, 2006, Dr. Rutledge noted that plaintiff had not received any relief from two epidural injections, but opined that her discogenic pain would improve with time. On November 14, 2006, Dr. Rutledge placed plaintiff at maximum medical recovery and indicated that she could perform light to medium work; however, he indicated that he did not believe that she could return to work as a certified nursing assistant and he assigned a five percent permanent anatomic impairment. He further stated that future employment would be in the light to medium category or as dictated by a Functional Capacity Exam "if desired."

On March 13, 2007, Dr. Rutledge reviewed a Functional Capacity Evaluation ("FCE") of the plaintiff from which he determined that she could perform the full range of sedentary work as well as some light work. He stated that plaintiff did not appear to have given her maximal effort on the grip test, but that the restrictions seemed reasonable. He also stated that plaintiff suffered from lumbar discogenic pain, as well as night time intermittent dysesthesia and cramps in both

legs while in the supine position, despite a normal MRI scan. He indicated that plaintiff could work subject to the limits identified in the FCE.

Dr. Alex Seldomridge is an orthopedic surgeon whom plaintiff began seeing for treatment in October 2007. Dr. Seldomridge obtained an MRI of plaintiff's lumbar spine on October 15, 2007, which showed no abnormalities, and reviewed prior MRI results; he noted that there was no evidence of significant central or foraminal stenosis or advanced degenerative changes. He also obtained x-rays of her lumbar spine and hips during her first visit; the spinal x-rays showed no acute fracture or spondylolisthesis and the disc space heights were relatively well maintained, and the x-rays of her pelvis showed no advanced degenerative changes in her hips and no acute fracture or dislocation. A full-body bone scan in October 2008 showed no abnormality. Dr. Seldomridge also ordered an electrodiagnostic evaluation to look for nerve problems which could explain plaintiff's pain. The evaluation was conducted by Dr. Charles Hall, who gave his impression that the study was normal, there was no evidence of a focal or generalized peripheral neuropathy in her lower extremities, and no electromagnetic evidence of radiculopathy.

On physical examination, Dr. Seldomridge noted that plaintiff could walk with a nonantalgic reciprocal heel-to-toe gait, that she experienced some leg pain with right straight leg raises, that she had a normal straight leg raise on the left, that she had negative FABER test[2] results on both sides, that she had no pain or instablility with passive range of motion in the hips, knees and ankles, that she had non-elicitable ankle-jerk reflexes on both sides, and that her motor strength in all extremities was 5/5. He further stated that she had no muscle spasms or

---

[2] The FABER test is administered to identify pathology in a patient's hips. The plaintiff's negative results on the FABER test indicate that she had no such pathology.

tenderness to palpation of the lumber spine with the exception of a small area on the right side of the paraspinal musculature.

Dr. Seldomridge gave his diagnostic impressions as lumbar strain, axial low back pain, and intermittent right lower extremity pain and numbness. During the course of his treatment of plaintiff, he repeatedly concluded that plaintiff could continue with light duty work, subject to the specific exertional and non-exertional limitations set forth above.

In addition to these two orthopedic specialists, plaintiff was seen by a pain management physician, Dr. Xiulu Ruan, beginning in January 2008. Dr. Ruan noted that plaintiff's lumbar spine retained its range of motion, but that she had tenderness over the thoracic and lumbar facet joints, a positive leg raise, creased sensation to fine touch at the right L3 dermatome and a normal gait and balance. Dr. Ruan diagnosed plaintiff as suffering from lumbago, lumbar facet syndrome, lumbar radiculitis, SI joint dysfunction, ruled out discogenic low back pain, and pain-induced depression and insomnia. Dr. Ruan treated plaintiff throughout 2008 and 2009. Plaintiff's pain continued throughout this period; the medications Dr. Ruan prescribed generally provided only temporary relief. In June 2009, Dr. Ruan reviewed nerve conduction studies of plaintiff's legs, noting that they showed no consistent electrophysiological evidence of focal or generalized neuropathy. At that time, he also obtained a new MRI scan of plaintiff's lumbar spine which showed no significant abnormalities.[3] A lumbar discography in November 2009 was inconclusive; based on the discography, Dr. Ruan diagnosed plaintiff with lumbar degenerative disc disease.

---

[3] The test results showed no focal disc herniation and no evidence of central canal or exiting foraminal stenosis. A lesion was noted which was, in the opinion of the radiologist, likely a large atypical hemangioma—a swelling of cells lining the blood vessels—abutting the superior endplate of L1.

Plaintiff testified at the hearing concerning the severity of her pain; the ALJ found her complaints of pain not fully credible. The ALJ held that plaintiff's complaints of pain were not supported by the objective medical evidence and also noted inconsistencies between her complaints and her activities.

Plaintiff makes the following argument:

> Thus, the abilities of Ms. Flowers, and particularly the severity of the degree of pain which she suffers, is a crucial determination. Her treating physician, Dr. Ruan, has never questioned the severity of Ms. Flowers' pain. He prescribed medications of significant strength to help alleviate some of her pain. He has given her epidural injections to help with the pain.
>
> The Commissioner's decision to base a determination regarding the residual functional capacity of Ms. Flowers upon orthopedic results that were over two years old, as well as to discredit the testimony of Ms. Flowers as to the severity of her pain, implicitly rejects the opinion of her treating pain management physician, Dr. Ruan. The Commissioner's failure to at least explore the possibility that the testimony of Ms. Flowers was credible, bolstered by her treatment by Dr. Ruan, constitutes a failure to develop the administrative record requiring remand.
>
> An ALJ's decision not to give controlling weight to a treating source, presuming that decision to be valid, is not the same thing as finding that such opinion is entitled to no weight whatsoever. "A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." SSR 96-2p, paragraph 7.
>
> Because of the Commissioner's failure to order a consultative examination and, in lieu thereof, relying upon treatment records that were over two years old, it is requested that the claim be remanded for further development, to include a consultative examination, or examinations.

Plaintiff's first claim is without merit. The ALJ was entitled to rely on the records of plaintiff's treating physicians; the existence of an arguable contrary inference[4] from another

---

[4] Plaintiff argues that the fact that Dr. Ruan prescribed pain medication to plaintiff and treated her for complaints of pain might be considered to demonstrate that he held a medical opinion concerning the severity of her pain. His records contain no statement of such an opinion, nor do they offer an objective basis for such an opinion.

8

treating source does not negate the other medical opinions and test results. With regard to the age of the reports of Drs. Rutledge and Seldomridge, both doctors treated plaintiff for the back problems on which she based her claim, and both did so during the period plaintiff claims to have been disabled. In addition, there is no evidence which would indicate that plaintiff's back problems became progressively worse, rather than better as one would expect, following her initial injury. Thus, the fact that the two orthopedic specialists treated plaintiff before she was sent to the pain management specialist does nothing to make the most recent doctor's records more reliable than those of the prior doctors.

Further, though plaintiff argues otherwise, Dr. Seldomridge provided a clear opinion concerning plaintiff's residual functional capacity following review of a residual functional capacity evaluation, and couched his opinions in terms of plaintiff's ability to perform work at sedentary, light and medium levels. Regardless of whether his use of those terms coincided perfectly with the definitions used by Social Security, the details he provided of plaintiff's limitations are more than adequate to provide support for the ALJ's conclusions concerning plaintiff's residual functional capacity.[5] The ALJ was not required to seek additional

---

[5] Social security regulations set out the standard for provision of a consultive examination.

With respect to consultive examinations, 20 C.F.R. § 404.1519a provides in relevant part as follows:

(a)(1) General. The decision to purchase a consultive examination for you will be made after we have given full consideration to whether the additional information needed (e.g., clinical findings, laboratory tests, diagnosis, and prognosis) is readily available from the records of your medical sources. …

(b) Situations requiring a consultive examination. A consultive examination may be purchased when the evidence as a whole, both medical and non-medical, is not sufficient to support a decision on your claim. Other situations, including but not limited to the situations listed below, will normally require a consultive examination: (1) the additional evidence needed is not contained in the records of your medical sources; … .

(Continued)

information through a consultive examination or other procedure before reaching his conclusions. Furthermore, nothing presented to the Appeals Council following the ALJ's decision addresses the plaintiff's physical limitations so as to render the Commissioner's determination unsupported by substantial evidence. Accordingly, it is the recommendation of the undersigned that the court reject plaintiff's first claim.

Failure to Find Depression to be 'Severe' Impairment

Plaintiff's second argument is that the ALJ erred by failing to find that her depression was a severe impairment. The undersigned finds no merit to this claim.

In January 2008, Dr. Ruan diagnosed plaintiff as suffering from depression secondary to pain and began prescribing her antidepressant medication. Plaintiff neither sought nor received any other care or treatment for that condition until after the administrative hearing. No other evidence concerning the existence or severity of plaintiff's depression was presented to the ALJ.

The ALJ noted that at the hearing neither plaintiff nor her counsel alleged that depression caused any functional limitations. Nonetheless, the ALJ evaluated plaintiff's alleged mental impairment using the mode of analysis of the Psychiatric Review Technique Form. *See* 20 C.F.R. §§ 404.1520a(e)(2), 416.920a(e)(2); Moore v. Barnhart, 405 F.3d 1208, 1213-14 (11th Cir. 2005). The ALJ determined, based on the evidence available, that plaintiff had no limitation in either activities of daily living or social functioning, that she had a mild limitation in concentration, persistence and pace, and that plaintiff had suffered no episodes of decompensation. The ALJ thus determined that plaintiff's claimed limitations from depression

---

20 C.F.R. 5 404.1519a. The medical records presented were sufficient to allow the ALJ to determine plaintiff's residual functional capacity without requiring an consultive examination.

10

were not severe. *See* 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1). This determination was supported by substantial evidence.

Following the ALJ's adverse decision, plaintiff requested review by the Appeals Council, and submitted medical records from a psychologist, Dr. Jake Epker. Dr. Ruan was considering implanting an intrathecal medication pump and referred plaintiff to Dr. Epker "for behavioral medicine evaluation to help determine potential psychosocial risk factors for poor surgical outcome and to generate appropriate treatment recommendations to optimize treatment outcome." Doc. 12 at 329. The medical records presented to the Appeals Council indicate that Dr. Epker had seen plaintiff on only two occasions before completing his report.

"[W]hen a claimant properly presents new evidence to the Appeals Council and it denies review, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007). In its order denying review, the Appeals Council provided no explanation for its decision beyond its conclusion that these additional records provided no reason to review the ALJ's decision. *See* Mansfield v. Astrue, 2010 WL 3401634 (11th Cir.) ("[T]he Appeals Council was not required to provide a more thorough explanation than it did.").

After addressing the results of a series of tests, and reaching conclusions concerning the potential surgery, Dr. Epker stated that plaintiff could likely benefit from behavioral medicine intervention. Further, he stated that "[i]t is important to note that none of the psychological factors identified in this case is disabling. From a psychological perspective, she can be released to work. However, as a practical matter, psychological factors as identified in this evaluation may represent significant obstacles to recovery and return to work, and their influence should be considered by any clinicians involved in treating her physical condition." Doc. 12 at 338. The

ALJ nonetheless included a provision in plaintiff's residual functional capacity that plaintiff was limited to work which did not involve detailed or complex tasks. [6]

The undersigned recommends that the court find the decision of the Appeals Council not to review the ALJ's decision in light of Dr. Epker's report to have been proper under the facts of this case. Dr. Epker found that plaintiff's mental limitations were not disabling and did not prevent her from working. His assertion that similar conditions as those he had identified in plaintiff—which included somatization[7] and pain catastrophization[8]—"may represent" obstacles to return to work does not present his opinion that this patient will encounter such obstacles or a determination of the severity of such obstacles. That mention provides no specific limitations to plaintiff's ability to work and does not contradict his clearly-stated opinion that her mental limitations do not prevent her from working. If accepted, the report of Dr. Epker establishes little more than the existence of depression and other problems; the ALJ's decision accepted that plaintiff suffered depression but held that it was not 'severe' as that term is used in the regulations. The undersigned recommends that the court find that the additional medical records presented to the Appeals Council did not render the denial of benefits erroneous.

## Conclusion

---

[6] The Commissioner notes that the evaluation concerned plaintiff's mental condition after the ALJ's adverse decision, and on that basis challenges the materiality of this evidence.

[7] Dr. Epker defines somatization as "a tendency to use physical symptoms as a way of dealing with and communicating about her emotional life, and that she is likely to experience exacerbation of physical symptoms in response to psychosocial stress.

[8] This term refers to a tendency to misinterpret or over-interpret pain signals.

Upon careful review of the record and the briefs of the parties, and for the reasons set forth above, it is the recommendation of the undersigned that the decision of the Commissioner denying benefits be AFFIRMED.

*See* Magistrate Judge's Explanation of Procedural Rights, attached, for important information on how to proceed.

DONE this the 6th day of January, 2012.

/s/ Katherine P. Nelson
UNITED STATES MAGISTRATE JUDGE

# MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1. Objection. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. See 28 U.S.C. ' 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc). The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten [now fourteen] days after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

(Emphasis added) A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. Transcript (applicable where proceedings tape recorded). Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

/s/ Katherine P. Nelson
UNITED STATES MAGISTRATE JUDGE